DA 09-0456

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 39

DELORES TACKE,

      Plaintiff and Appellee,

   v.

ENERGY WEST, INC.,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDV 05-1064
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Mark F. Higgins; Ugrin, Alexander, Zadick & Higgins, P.C.;
Great Falls, Montana

            Richard N. Selby, II; Dworken & Bernstein Co., L.P.A.; Painesville, Ohio

      For Appellee:

            Elizabeth Best; Best Law Offices, P.C.; Great Falls, Montana

            Howard F. Strause; Attorney at Law; Great Falls, Montana

                Submitted on Briefs:  January 13, 2010

                         Decided:  February 23, 2010

Filed:

                    _____
                           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Energy West, Inc. appeals from a jury verdict and subsequent District Court orders entering a judgment in favor of its employee, Delores Tacke, for overtime wages, liquidated damages, costs, and attorneys' fees under the Fair Labor Standards Act (FLSA). We affirm.

¶2 Energy West presents five issues on appeal, which we restate as follows:

¶3 *1. Did the District Court err in denying Energy West's motions for summary judgment and directed verdict regarding Tacke's status as an exempt employee for purposes of overtime compensation under the FLSA?*

¶4 *2. Did the District Court err in awarding liquidated damages to Tacke?*

¶5 *3. Did the District Court err in awarding attorneys' fees to Tacke without requiring Tacke's counsel to provide contemporaneous time records?*

¶6 *4. Did the District Court err in awarding costs pursuant to FLSA instead of the Montana costs statute?*

¶7 *5. Did the District Court err in admitting Tacke's exhibits 2, 3, 4, and 13 over Energy West's objections?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶8 Tacke began work for Energy West in 1970 and held various positions within the company during her more than thirty-year career. Tacke filed suit against Energy West to recover overtime wages she claimed she had earned between September 15, 2002, and July 15, 2005.

¶9    During those years, Tacke worked as the Supervisor of the Credit and Collection Department, a position for which she received a salary and was classified by Energy West as an exempt employee. Tacke's exempt classification meant she was not entitled to receive overtime wages in addition to her salary.

¶10   In 2004, Tacke and other Energy West employees attended a wage and hour seminar in Billings. The seminar spurred several management employees to question Tacke's classification as an exempt employee. Energy West's Human Resources Department advised Kurt Baltrusch, Director of Operations and Tacke's direct supervisor, of the potential error, and Baltrusch investigated the matter further.

¶11   Baltrusch testified that he sought advice from John Allen, who was both corporate counsel and the Human Resources Officer for Energy West. Allen instructed Baltrusch to ask Tacke to prepare a written list of her duties. Allen also provided Baltrusch a checklist to aid in determining whether Tacke should be classified as an exempt or non-exempt employee. Tacke provided a listing of her duties and the percentage of her time expended on each duty. After reviewing the list, Baltrusch testified that he again spoke with Allen and, although testimony was unclear about whether the two relied upon either the "executive" or "administrative" exemption set forth in law, both agreed that Energy West should reclassify Tacke as a non-exempt employee entitled to receive overtime compensation. Baltrusch testified he also spoke with others about the issue, including Energy West CEO David Cerotzke. Cerotzke initially disputed Baltrusch's conclusion but eventually allowed Baltrusch to reclassify Tacke as non-exempt.

¶12 On June 30, 2005, Baltrusch wrote a letter to Tacke informing her that Energy West was reclassifying her as non-exempt. The letter provided, in relevant part: "For some time there has been a question on your employment status, that is whether you are exempt or non-exempt for overtime. From my standpoint, you are a non-exempt employee and must be paid when you work extra hours, that is, over 40 hours each week." Tacke testified that she discussed the details of the letter with Baltrusch and Allen, but that the issue of past uncompensated overtime was not resolved.

¶13 Tacke filed suit against Energy West in September 2005 in the Eighth Judicial District Court to recover claimed overtime compensation. After Tacke filed suit, Energy West reversed its decision to classify her as non-exempt, returning her to exempt status.

¶14 The District Court denied cross-motions for summary judgment, and the case proceeded to a jury trial. On November 14, 2008, the jury returned a special verdict in favor of Tacke for $35,220.00 in uncompensated overtime wages. The jury did not, however, find that Tacke proved by a preponderance of the evidence that Energy West's failure to pay overtime was willful.

¶15 The District Court entered a judgment on January 15, 2009, awarding Tacke $35,220.00 for uncompensated overtime wages, an additional $35,220.00 in liquidated damages, and $4,958.73 in costs. On July 21, 2009, the District Court awarded Tacke an additional $4,372.10 in expert witness fees, $1,147.10 for travel expenses for Attorney Howard Strause, and attorneys' fees of $95,737.50 for Strause and $90,675.00 for

4

Elizabeth Best. Tacke obtained a total final judgment against Energy West for $267,330.43. Energy West appeals.

## STANDARD OF REVIEW

¶16 We review the District Court's denial of motions for summary judgment and directed verdict *de novo*. *Trucker v. Farmers Ins. Exch.*, 2009 MT 247, ¶ 23, 351 Mont. 448, 215 P.3d 1 (citation omitted); *McKay v. Wilderness Dev., LLC*, 2009 MT 410, ¶ 26, 353 Mont. 471, 221 P.3d 1184 (citation omitted). When considering a summary judgment motion, a court may not "make findings of fact, weigh the evidence, choose one disputed fact over another, or assess the credibility of witnesses." *Anderson v. Schenk*, 2009 MT 399, ¶ 2, 353 Mont. 424, 220 P.3d 657. The court may only "examine[] the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine whether there is a genuine issue as to any material fact relating to the legal issues raised and, if there is not, whether the moving party is entitled to judgment as a matter of law on the undisputed facts." *Anderson*, ¶ 2 (citing M. R. Civ. P. 56(c); *Corporate Air v. Edwards Jet Ctr.*, 2008 MT 283, ¶ 28, 345 Mont. 336, 190 P.3d 1111). Similarly, a motion for a directed verdict is "proper only when there is a complete absence of any evidence to warrant submission to a jury." *Ryan v. City of Bozeman*, 279 Mont. 507, 510, 928 P.2d 228, 229-30 (1996) (citation omitted).

¶17 We review the District Court's award of attorneys' fees, costs, and evidentiary rulings for an abuse of discretion. *In re Marriage of Cameron,* 2009 MT 302, ¶ 17, 352 Mont. 375, 217 P.3d 78 (citation omitted); *Ritchie v. Town of Ennis*, 2004 MT 43, ¶ 8,

5

320 Mont. 94, 86 P.3d 11 (citation omitted); *Malcolm v. Evenflo Co.*, 2009 MT 285, ¶ 29, 352 Mont. 325, 217 P.3d 514 (citation omitted).

**DISCUSSION**

¶18     *1. Did the District Court err in denying Energy West's motions for summary judgment and directed verdict regarding Tacke's status as an exempt employee for purposes of overtime compensation under the FLSA?*

¶19     Energy West argues Tacke provided no facts establishing that she fell outside the administrative exemption to the FLSA and the District Court therefore erred in denying its motions for summary judgment and directed verdict.  Tacke counters that she indeed presented evidence that her work did not qualify for the administrative exemption and that Energy West failed to show, as a matter of law, that she fit within the administrative exemption.

¶20     In 1938, Congress passed the FLSA "to prevent the use of unfair trade practices in interstate commerce leading to 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . .'" *Stewart v. Region II Child and Family Servs.*, 242 Mont. 88, 94, 788 P.2d 913, 917 (1990) (citation omitted).  The FLSA requires employers to pay employees overtime compensation for hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  The FLSA provides exemptions for certain executive and administrative employees, but employers bear the burden of proving that the employee fits "plainly and unmistakably within the exemption's terms."  *Mont. Public Employee's Assoc. v. Mont. Dept. of Transp.*, 1998 MT 17, ¶ 11, 287 Mont. 229, 954 P.2d 21 (citing *Spradling v. City*

*of Tulsa*, 95 F.3d 1492, 1495 (10th Cir. 1996); *Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir. 1995); *Reich v. Wyo.*, 993 F.2d 739, 741 (10th Cir. 1993)).

¶21    The administrative exemption relied upon by Energy West applies if three elements exist.[1]  First, the employee must be "[c]ompensated on a salary or fee basis at a rate not less than $455.00 per week . . . exclusive of board, lodging, or other facilities." 29 C.F.R. § 541.200(a)(1).  Second, the employee's "primary duty" must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."   29 C.F.R. § 541.200(a)(2).  "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business . . . ."  29 C.F.R. § 541.201(a).   Third, the employee's "primary duty" must include "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3).  Such discretion or independent judgment must be "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  29 C.F.R. § 541.202(e).  To aid in applying these three elements, the regulations provide examples of positions that qualify for the administrative exemption.  29 C.F.R. § 541.203; *see also* 29 C.F.R. § 541.703(b).

¶22    Applying these regulations to the evidence in the record leads us to conclude that the District Court did not err in denying summary judgment and a directed verdict to

---

[1] In 2004 the U.S. Department of Labor reorganized and clarified the regulations addressing the administrative exemption, but, for purposes of the analysis in this case, the substantive content of the regulations remained the same.

Energy West. We need look no further than Tacke's own testimony about her typical work day. At 6:00 a.m., Tacke began by printing notices for Energy West customers whose accounts were delinquent. The computer generated the list of notices, and the printing generally took Tacke two hours to complete. Around 8:00 a.m., Tacke would help cashiers open the mail and post payments to ensure Energy West did not shut off gas to a customer who had just paid a delinquent account. From 9:00 a.m. to 10:00 a.m., Tacke returned to printing notices for delinquent accounts until completed. For the rest of the morning, Tacke took "phone calls and payments from customers" and also called customers to arrange for Energy West to access inside meters. During the lunch hour and other break periods, Tacke filled in for the switchboard operator. For the rest of the afternoon, Tacke took additional phone calls from customers who wanted to pay on their past due accounts, entered customer payments on the computer system, and ensured Energy West had access to inside meters. According to Tacke, she addressed customer issues with the Public Service Commission less than once a month. She operated exclusively within Energy West's policies and manuals, and, similar to other employees, was authorized to "write off balances that people owe on their bills" of up to only $50.

¶23 This testimony, taken as true, establishes that Tacke did not meet the requisite elements, set forth above, for an administratively exempt employee. Although contested by Energy West, this evidence was nonetheless sufficient to raise genuine issues of material fact about whether Tacke qualified for the administrative exemption. *See Anderson*, ¶ 2 (A court has no authority to "make findings of fact, weigh the evidence,

8

choose one disputed fact over another, or assess the credibility of witnesses" at the summary judgment stage.) Neither was there "a complete absence of any evidence to warrant submission to a jury" necessitating a directed verdict. *Ryan*, 279 Mont. at 510, 928 P.2d at 229-30 (citation omitted). We affirm the District Court's denial of Energy West's motions for summary judgment and directed verdict.

¶24 *2. Did the District Court err in awarding liquidated damages to Tacke?*

¶25 We review an award of liquidated damages under the FLSA utilizing multiple standards of review, although we have not previously stated them comprehensively. First, concerning the determination that an employer has or has not acted in good faith and on reasonable grounds, a district court's factual findings are reviewed for clear error and legal conclusions are reviewed *de novo* for correctness. *Tefft v. Mont.*, 271 Mont. 82, 91-92, 894 P.2d 317, 323 (1995); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) (citing 29 U.S.C. § 260). Then, if an employer has established good faith and reasonable grounds, we review the ultimate decision concerning an award of liquidated damages for an abuse of discretion. *Tefft*, 271 Mont. at 93, 894 P.2d at 324; *Rodriguez*, 518 F.3d at 1272.

¶26 Energy West first argues that because the jury found it did not act willfully in withholding overtime compensation from Tacke, the District Court was prohibited from awarding liquidated damages. Tacke responds that, while she did not satisfy her burden of proving Energy West acted willfully, Energy West likewise failed to meet its burden

9

of proving it acted in good faith and on reasonable grounds—an entirely different question.

¶27 The FLSA provides that if an employer withholds overtime compensation in violation of 29 U.S.C. § 207(a)(1), the employer "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . *and in an additional equal amount as liquidated damages*." 29 U.S.C. § 216(b) (emphasis added). However they may be perceived, liquidated damages are not for the purpose of punishing the employer, but for compensating employees "for any losses caused by delayed receipt of overtime wages they are due." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 910 (3d Cir. 1991) (citation omitted). To avoid liquidated damages, an employer must first demonstrate that his actions were "in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . ." 29 U.S.C. § 260; *see also* 29 C.F.R. § 790.22.

¶28 The employer bears a "substantial burden" in demonstrating good faith and reasonable grounds. *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991) (citation omitted); *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982). "Good faith" exists when the employer has "an honest intention to ascertain and follow the dictates of the Act." *Renfro*, 948 F.2d at 1540 (citation omitted). "Reasonable grounds" is an objective standard by which to evaluate the employer's behavior. *Renfro*, 948 F.2d at 1540 (citation omitted). Prior to a showing of good faith and reasonable grounds, "the district court has *no discretion* to mitigate an employer's statutory liability for liquidated

10

damages." *Marshall*, 668 F.2d at 753 (emphasis added, citation omitted). Only after the employer carries its burden may a district court, "in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260.

¶29 We thus reject Energy West's suggestion that, because it did not act willfully, *ipso facto* it acted in good faith and on reasonable grounds. The question of willfulness determines the length of the statute of limitations. In "a cause of action arising out of a willful violation," instead of a two-year statute of limitations, the employee is entitled to a three-year statute of limitations. 29 U.S.C. § 255(a). To gain the additional year, the burden is on the *employee* to show the employer's actions were willful, meaning "deliberate," "intentional," or that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 135, 108 S. Ct. 1677, 1681, 1682 (1988). Here, the jury determined this standard had not been met, and Tacke was therefore entitled to the two-year statutory period. This determination, however, is an entirely different question than whether the employer acted in good faith and upon reasonable grounds. *See Rodriguez*, 518 F.3d at 1274. The *employer* bears the burden of demonstrating the good faith and reasonable grounds necessary to avoid an award of liquidated damages, and it is noteworthy that, in addition to being described as a "substantial burden," courts have stated that an employer's ability to escape liquidated damages is the exception, not the

rule. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986) (recognizing "[d]ouble damages are the norm, single damages the exception").[2]

¶30    Even if the employer carries this burden, the district court "may still award liquidated damages at its discretion in any amount up to that allowed by 29 U.S.C. § 216(b)." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 n. 8 (5th Cir. 1990) (citing *McClanahan v. Mathews*, 440 F.2d 320, 323 (6th Cir. 1971); *Martinez v. Food City, Inc.*, 658 F.2d 369, 376 (5th Cir. Unit A 1981)).  "[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds . . . , the court *may, in its sound discretion*, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260 (emphasis added).  Because Congress used the permissive word "may" instead of "shall," the District Court had no affirmative obligation to strike or reduce the liquidated damages award against Energy West.  In light of the facts in this record, we conclude that the District Court was well within its discretion to decline to do so.

¶31    *3.  Did the District Court err in awarding attorneys' fees to Tacke without requiring Tacke's counsel to provide contemporaneous time records?*[3]

¶32    FLSA provides that "[t]he court in such action shall . . . allow a reasonable attorney's fee to be paid by the [employer] . . . ." 29 U.S.C. § 216(b).  To determine the

---

[2] The parties here agreed that whether Energy West acted in good faith and on reasonable grounds was a determination to be made by the court, not the jury.

[3] Energy West does not challenge the District Court's conclusion that a fee rate of $225 per hour was reasonable or its calculation of the lodestar amount.

attorneys' fees, courts use the "lodestar" method, which consists of "[m]ultiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam) (citation omitted); *see also Laudert v. Richland Co. Sheriff's Dept.*, 2001 MT 287, ¶ 14, 307 Mont. 403, 38 P.3d 790. The lodestar method "is *presumed* to be the reasonable fee to which counsel is entitled." *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S. Ct. 3088, 3098 (1986) (quoting *Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 1548 (1984)) (emphasis in original, quotations omitted); *Laudert*, ¶ 17 (citation omitted). The party seeking the fees bears the burden of showing the "reasonableness of the hours billed." *Saizan*, 448 F.3d at 799. Reasonable fees do not include fees that were "unproductive, excessive, or redundant," and the fee claimant must establish reasonableness by the presentation of evidence. *Saizan*, 448 F.3d at 799 (citation omitted).

¶33 Energy West argues the District Court erred in awarding attorneys' fees because Tacke failed to submit contemporaneous time records detailing her counsel's work on the matter. Tacke rebuts Energy West's argument, first, by arguing Energy West neither requested the production of billing documentation nor produced its own number of hours worked on the case. However, it was not Energy West which was seeking a fee award. It was Tacke's burden, not Energy West's, to provide evidence demonstrating that her claimed attorneys' fees were reasonable. To hold otherwise would shift Tacke's burden to Energy West.

13

¶34 Tacke then argues, as she did in the District Court, that she was not required to provide contemporaneous billing records and that her evidence was sufficient to carry her burden. The evidence Tacke submitted to the District Court consisted of two affidavits containing a total of seven sentences, expert deposition testimony, and testimony from Tacke's counsel. This evidence was long on opinion, but short on detail about the purpose of the hours claimed by the lawyers. The District Court concluded that the evidence, when coupled with its personal knowledge of the case, validated "the hours that have been submitted here are in fact reasonable."

¶35 However, unlike a district court, an appellate court lacks personal observation and involvement in a case that can be called upon when considering an attorneys' fees award. Without detailed evidence about the hours spent, we are left to assessing counsel's conclusory statements about lack of duplication or reasonableness on their face, or comparing contrary expert opinion. Appropriate appellate review is thereby hindered, and for this reason appellate courts nationally have required production of contemporaneous billing records, speaking with much frustration about the issue. The Second Circuit admonished plaintiffs' counsel in a similar, fee-shifting circumstance:

> In light of the difficulties that can be traced to the failure of plaintiffs' attorneys to keep contemporaneous time records, we are tempted to accept the State's proposal that plaintiffs be denied all attorney's fees.
>
> . . .
>
> [T]he difficulties raised by the lack of contemporaneous records in this case convince us of the need to announce for the future that contemporaneous time records are a prerequisite for attorney's fees in this Circuit.

14

*N.Y. State Assoc. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) (analyzing award of reasonable attorneys' fees under 42 U.S.C. § 1988). We are similarly "tempted" in this case. Other courts have likewise expressed these concerns. *See e.g. Natl. Assoc. of Concerned Vets. v. Sec. of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984); *In re Hudson & Manhattan R.R.*, 339 F.2d 114, 115 (2d Cir. 1964); *Sussman v. Patterson*, 108 F.3d 1206, 1212 (10th Cir. 1997); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Erickson v. City of Topeka*, 239 F. Supp. 2d 1202, 1206 (D. Kan. 2002) ("To satisfy the burden of proving a reasonable fee, counsel must keep contemporaneous and detailed records of time . . . .") (citation omitted); *Bergeson v. Dilworth*, 875 F. Supp. 733, 737 (D. Kan. 1995) (production of time records required when attorneys work on a contingent fee basis).

¶36 Tacke further argues that even if she wanted to produce the billing records, both the attorney-client privilege and work-product doctrine preclude her from doing so. In asserting the attorney-client privilege, Tacke cites to *Clarke v. American Commerce Natl. Bank*, 974 F.2d 127 (9th Cir. 1992). However, assuming *Clarke* applies, it does not support a blanket prohibition on providing billing records. There, the American Commerce National Bank (ACNB) allegedly paid the personal legal expenses for its chairman. *Clarke*, 974 F.2d at 128. The Office of the Comptroller of the Currency investigated the matter further, and eventually issued an administrative subpoena to

15

ACNB for the production of billing statements from outside legal counsel. *Clarke*, 974 F.2d at 128. ACNB asserted the attorney-client privilege, and after reviewing the records, the Ninth Circuit concluded:

> [The billing statements] do not contain privileged communications between attorney and client. The statements contain information on the identity of the client, the case name for which payment was made, the amount of the fee, and the general nature of the services performed.

*Clarke*, 974 F.2d at 130. While *Clarke* protects records "which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided," it does not support a blanket prohibition on the use of billing statements. *Clarke*, 974 F.2d at 129. In-camera review by the district courts, accompanied with the use of redaction when necessary, will accommodate the need for such records in order to demonstrate the reasonableness of fee awards in fee-shifting cases while also protecting the attorney-client privilege. *See e.g. Huether v. Dist. Ct. of the Sixteenth Jud. Dist.*, 2000 MT 158, ¶ 22, 300 Mont. 212, 4 P.3d 1193.

¶37 Equally unpersuasive is Tacke's argument that the work-product doctrine also prohibits the use of billing statements to support an attorneys' fees claim. The work-product doctrine, as delineated in M. R. Civ. P. 26(b)(3), "is broader in application than the attorney-client privilege, but it is not an absolute privilege." *Kuiper v. Dist. Ct. of the Eighth Jud. Dist.*, 193 Mont. 452, 462, 632 P.2d 694, 700 (1981). To interpret the doctrine as imposing a blanket prohibition on the use of administrative records, such as time and billing documents, stretches the privilege too far. As generally noted, "the work product rule cannot be invoked by an attorney in connection with an affirmative claim for

16

recovery of attorney's fees to avoid a discovery inquiry concerning possible apportionment of fees among compensable and noncompensable claims." 23 Am. Jur. 2d *Depositions and Discovery* § 45 (2002) (citing *Martin v. Paunovich*, 632 So. 2d 611 (Fla. 5th Dist. App. 1993)); *see also First Union Natl. Bank of S.C. v. Soden*, 511 S.E.2d 372, 380 (S.C. App. 1998) (analyzing billing statement as not falling within work product). To the extent billing records may contain "ordinary work product" or "opinion work product," the records are, again, subject to redaction of such information. *See e.g. Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 115, 118, 861 P.2d 895, 910, 912 (1993).

¶38 The District Court conducted a careful review of the fee issue and we conclude that it exercised conscientious judgment and did not clearly err in evaluating the evidence or abuse its discretion in approving the fee award. However, while we do not adopt a per se rule as some courts have done, we strongly urge counsel to keep and provide contemporaneous time records in support of attorneys' fees requests in fee-shifting cases, and we encourage district courts to look askance at requests not so supported.

¶39 *4. Did the District Court err in awarding costs pursuant to FLSA instead of the Montana costs statute?*

¶40 Energy West argues the District Court erred by awarding costs beyond those allowed under § 25-10-201, MCA, which it argues is controlling. Tacke responds that costs in this case should be awarded pursuant to 29 U.S.C. § 216(b), not § 25-10-201, MCA.

17

¶41    Tacke brought this case under FLSA, which provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Montana's cost statute allows the following costs:

> (1) the legal fees of witnesses, including mileage, or referees and other officers;
> (2) the expenses of taking depositions;
> (3) the legal fees for publication when publication is directed;
> (4) the legal fees paid for filing and recording papers and certified copies of papers necessarily used in the action or on the trial;
> (5) the legal fees paid stenographers for per diem or for copies;
> (6) the reasonable expenses of printing papers for a hearing when required by a rule of court;
> (7) the reasonable expenses of making transcript for the supreme court;
> (8) the reasonable expenses for making a map or maps if required and necessary to be used on trial or hearing; and
> (9) other reasonable and necessary expenses that are taxable according to the course and practice of the court or by express provision of law.

Section 25-10-201, MCA. Energy West challenges the District Court's award of costs for mediation fees, legal research, copies, postage, and the construction and synchronization of a deposition, arguing they exceed the costs allowed by § 25-10-201, MCA.

¶42    When determining which statute to apply, we are to use the particular over the general. Section 1-3-225, MCA. Our decision in *Kuhr v. City of Billings*, 2007 MT 201, 338 Mont. 402, 168 P.3d 615, provides helpful guidance. In *Kuhr*, the employees pursued a wage claim under the state statutory scheme. *Kuhr*, ¶ 8. The parties argued whether costs should be awarded under the general costs statute or pursuant to § 39-3-214, MCA, of the wage claim statutes. *Kuhr*, ¶ 35. We reasoned that "a more specialized

18

statute" may require its application instead of the general costs statute. *Kuhr*, ¶ 37. We concluded that "[t]his is a wage claim case specifically covered by a more specialized statute," and applied § 39-3-214, MCA, the statute awarding costs in wage claims, instead of the general costs statute, § 25-10-201, MCA. *Kuhr*, ¶ 37.

¶43 Similar to *Kuhr*, FLSA's cost provision is more specific and should control over Montana's general costs statute. To effectuate FLSA's policies, "Congress has permitted individual employees to sue for back wages and liquidated damages and to receive reasonable attorney's fees and costs." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 n. 16, 101 S. Ct. 1437, 1444 n. 16 (citing 29 U.S.C. § 216(b)). In keeping with the purpose of FLSA and our logic in *Kuhr*, 29 U.S.C. § 216(b) should govern instead of § 25-10-201, MCA.[4]

¶44 *5. Did the District Court err in admitting Tacke's exhibits 2, 3, 4, and 13 over Energy West's objections?*

¶45 Energy West argues that Tacke's exhibits of 2, 3, 4, and 13 were irrelevant, confusing, and should have been excluded. Tacke responds that these exhibits were relevant because they allowed the jury to compare her classification and duties when classified as non-exempt with her duties when classified as exempt. Tacke further argues that Energy West did not raise the proper objection for exhibits 2 and 4.

---

[4] Our holding is limited by Energy West's narrow argument that the District Court erred in awarding costs beyond those allowed under § 25-10-201, MCA. While we reject application of § 25-10-201, MCA, to the case *sub judice*, no argument is made that the costs awarded here were not allowable under 29 U.S.C. § 216(b). There is authority on that issue, but we leave the issue for another day. *See e.g. Cho v. Koan Med. Servs. P.C.*, 524 F. Supp. 2d 202, 212 (E.D.N.Y. 2007) (denying legal research costs); *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1316 (S.D. Fla. 2009) (denying mediation expenses); *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) (per curiam) (referring to 28 U.S.C. § 1920 to determine costs).

¶46    Relevant evidence includes "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401. The exhibits at issue are three job descriptions which were not generated during the 2002 to 2005 time period at issue, and a letter dated October 29, 1990, informing Tacke that she was classified as non-exempt and must report her overtime.

¶47    After reviewing the record, we believe Energy West properly raised a relevance objection, but conclude the District Court did not abuse its discretion in admitting the exhibits. While we see Energy West's concern about relevance, the admitted exhibits, though covering a different time period when Tacke was paid as an hourly employee, provided the jury with additional information about Energy West's classification and reclassification of Tacke's position and whether Energy West had acted willfully.

¶48    Even if relevant, evidence may be excluded if it has the propensity to confuse the issue or mislead the jury. M. R. Evid. 403. Here, the District Court required Tacke to lay additional foundation about the exhibits and Energy West had the opportunity through cross-examination, case-in-chief, and closing arguments to clarify any potential confusion that the exhibits caused.

¶49    Affirmed.

/S/ JIM RICE

20

We concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON