DA 10-0459

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 76

IN THE MATTER OF THE ESTATE OF
EVERETT HENRY HICKS,

Deceased.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Broadwater, Cause No. DP 08-06 Honorable Dorothy McCarter, Presiding Judge |

COUNSEL OF RECORD:

For Appellant:

David C. Dalthorp, Murry Warhank; Gough, Shanahan, Johnson & Waterman, Helena, Montana

For Appellee:

Antonia Marra; Marra, Sexe, Evenson & Bell, Great Falls, Montana

Submitted on Briefs: March 23, 2011

Decided: April 19, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 The Estate of Everett Hicks, appeals an order of the First Judicial District Court, Broadwater County, ordering the Estate to pay all outstanding child support without any offset for Social Security death benefits received by Hicks' minor children. We affirm.

ISSUE

¶2 The only issue on appeal is whether the District Court correctly concluded that the terms of the amended parenting plan prevented the Estate from receiving a credit towards the Estate's child support obligation.

BACKGROUND

¶3 Hicks died in December 2007. At that time, he was divorced from his first wife, Melissa Thompson. During their marital dissolution, the pair entered into a parenting plan regarding their two minor children. In May of 2005, that plan was amended and at the time of Hicks' death provided, in pertinent part:

> Father shall pay Mother $550 per month per child as and for child support. Father's support obligation shall continue until each child graduates from high school or turns nineteen (19) years of age, whichever is earlier. . . . In the event of the death of Father before both children graduate from high school or become emancipated, Father's support obligation continues through that time in the same manner as if he had survived, and Father shall make provision for payment of such child support either by means of provision in Father's estate for a trust for both children or through life insurance, or both, as discussed below.

> .  .  .

> In other words, Father's estate will pay the sum of $550 per child during the entire time that Father's child support obligation would have continued if he had survived. Father agrees that this document should be deemed to

2

> have been executed with all of the formalities required for a will and that it is the Father's testamentary intent to make the above-described provision for his children as part of his estate planning.
>
> .   .   .
>
> This Amended Parenting Plan shall be made an integral part of the Court's order and file and shall be enforceable by any method provided by law or equity.  This Amended Parenting Plan shall be binding upon the parties, their personal representatives, heirs and assigns.

¶4    Hicks never purchased any insurance or created any trust to specifically provide for payment of child support, in the event of his death.  After Hicks died, the Social Security Administration began paying Social Security death benefits to Hicks' minor children.  Each child received a monthly payment of $252.

¶5    Following Hicks' death, the Estate made the monthly child support payments through May 2008, and then ceased.  On September 9, 2008, Thompson made a creditor's claim against the Estate for payment of outstanding child support pursuant to the terms of the amended parenting plan.  The Estate conceded its duty to pay but disputed the amount.  It argued that the minor children were receiving Social Security death benefits, and those benefits should be credited against the Estate's child support obligation.

¶6    On February 17, 2009, the District Court rejected the Estate's contentions.  The District Court concluded that the "language of the child support agreement does not allow for the estate to receive a credit against any Social Security death benefits which the minor children might receive."  The Estate was ordered to pay all outstanding child support, plus interest.  The Estate appealed, arguing that the District Court erred by

3

denying it a credit against the Social Security death benefits received by Hicks' minor children.

## STANDARD OF REVIEW

¶7 We review a district court's legal conclusions to determine if they are correct. *Tacke v. Energy West Inc.*, 2010 MT 39, ¶ 25, 355 Mont. 243, 227 P.3d 601.

## DISCUSSION

¶8 The Estate asserts two reasons why the Social Security death benefits received by Hicks' minor children should serve as a credit against the child support obligation. First, the Estate argues that this Court should analogize Social Security death benefits to Social Security disability benefits and provide for an offset in child support payments. Second, the Estate argues the District Court's interpretation of the amended parenting plan was erroneous. We address each in turn.

¶9 First, the Estate invites the Court to hold that Social Security death benefits should be treated analogously to Social Security disability benefits. A parent may receive a credit towards that parent's support obligation when his or her minor children receive Social Security benefits due to the parent's disability. *In re Marriage of Durbin*, 251 Mont. 51, 54, 58, 823 P.2d 243 (1991); *In re Marriage of Cowan*, 279 Mont. 491, 501, 928 P.2d 214, 220-21 (1996). Thompson urges the Court to distinguish Social Security disability benefits from Social Security death benefits. We decline to resolve this issue because it is irrelevant to the case at hand. This case is controlled by the explicit language of the amended parenting plan, and we express no opinion regarding the merits of the Estate's first argument.

4

¶10 Turning to the Estate's second argument, we conclude that the District Court did not err when it concluded that the amended parenting plan obligated the Estate to pay $550 per child in monthly child support regardless of any Social Security benefits received by the children. Separation agreements are enforced and interpreted under contract law. *In re Marriage of Mease*, 2004 MT 59, ¶ 57, 320 Mont. 229, 92 P.3d 1148; *Quinn v. Quinn*, 191 Mont. 133, 622 P.2d 230 (1981); § 40-4-201(5), MCA. Parenting plans are contained within separation agreements and receive the same contractual enforcement. Section 40-4-201(1), MCA. Thus, if the language of the parenting plan is clear, i.e. unambiguous, it controls the agreement's interpretation. *In re Marriage of Rolf*, 2000 MT 361, ¶ 25, 303 Mont. 349, 16 P.3d 345. Ambiguity does not exist merely because the parties assert competing interpretations. *In re Estate of Burrell*, 2010 MT 280, ¶ 25, 358 Mont. 460, 245 P.3d 1106. "Rather, ambiguity exists where the language of the contract, as a whole, is reasonably subject to different interpretations." *Estate of Burrell*, ¶ 25.

¶11 Both parties agree that the parenting plan is unambiguous but put forth opposing interpretations. The Estate argues that the use of the term "support obligation" means that the child support payments can be satisfied from sources other than the Estate. Thompson argues that the explicit terms of the agreement make the Estate liable for $550 per child, per month, without regard to any other source of payment to the minor children. We agree with Thompson and conclude that the Estate's interpretation is unreasonable.

5

¶12 The parties entered into a contractual agreement which binds the Estate to pay child support, thereby contracting around any potential offset or credit from outside payment sources. Under the explicit language of the amended parenting plan, Hicks assumed a $550 per child monthly support payment. The subsequent language made clear that in the event of Hicks' death, the Estate assumed the obligation to pay child support. This obligation is set forth without reference to any potential offset from an outside payment source. The fact that the plan provided for a trust or life insurance to be the vehicle for payment lends no support to the Estate's contention that the agreement contemplated payment from other sources. Had Hicks actually purchased life insurance or created a trust, payment to the minor children would still have originated from the Estate. Furthermore, the Estate's cites to *Durbin*, *Cowan*, and *In re Marriage of Williams*, 220 Mont. 232 714 P.2d 548 (1986), are distinguishable. Those cases did not involve parenting plans with explicit terms governing the child support obligations.

¶13 Moreover, in the event that the Estate's obligation was not clear enough, the parties reiterated, "[i]n other words, Father's estate will pay the sum of $550 per child during the entire time that Father's child support obligation would have continued if he had survived." Nothing in this language contemplates an offset or credit for any payments made to the minor children by an outside source. Rather, this language explicitly contracts around any offset or credit that might have otherwise applied.

¶14 The District Court correctly concluded that the amended parenting plan precluded the Estate from receiving a credit against the Social Security death benefits received by Hicks' minor children.

¶15   Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ BETH BAKER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE