FILED

01/10/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0596

DA 21-0596

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 6

STATE OF MONTANA; and MONTANA
DEPARTMENT OF NATURAL RESOURCES
AND CONSERVATION,

      Plaintiffs and Appellees,

  v.

AVISTA CORPORATION, a Washington corporation,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. ADV-2004-846
                    Honorable Michael Menahan, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Bradley J. Luck, Kathryn S. Mahe, Garlington, Lohn & Robinson, PLLP,
                Missoula, Montana

                William J. Schroeder, KSB Litigation, P.S., Spokane, Washington

        For Appellee State of Montana:

                Austin Knudsen, Montana Attorney General, Brent A. Mead, Assistant
                Solicitor General, Helena, Montana

                Pat Risken, Attorney at Law, Helena, Montana

                Emily Jones, Jones Law Firm, PLLC, Billings, Montana

        For Appellee Montana Department of Natural Resources and Conservation:

                Brian C. Bramblett, Montana Department of Natural Resources and
                Conservation, Helena, Montana

Submitted on Briefs:  November 2, 2022

Decided:  January 10, 2023

Filed:

Clerk

2

Justice Jim Rice delivered the Opinion of the Court.

¶1      Defendant Avista Corporation (Avista) appeals from the order entered by the First Judicial District Court granting summary judgment to the State of Montana and Department of Natural Resources and Conservation (State) regarding interpretation of a settlement agreement between the parties.   Avista challenges the District Court's conclusion that the agreement's provision governing a conditional reduction of rent, if triggered, would not provide a retroactive credit for past rent paid by Avista.  We affirm in part and reverse in part, and address the following issues:

¶2      *1.   Did the District Court err by reaching the merits of a nonjusticiable issue?*

¶3      *2.   Did the District Court err by its interpretation of the parties' settlement agreement?*

## FACTUAL AND PROCEDURAL BACKGROUND

### Prior Litigation

¶4      This case arises from settled litigation between the parties involving the State's rent claims against utility companies for use of riverbed acreage occupied by their hydroelectric projects.  *See, e.g.*, *PPL Mont., L.L.C. v. State*, 2010 MT 64, 355 Mont. 402, 229 P.3d 421 (herein, *PPL Mont. v. State*) (*rev'd in PPL Mont., LLC v. Montana*, 565 U.S. 576, 132 S. Ct. 1215, 182 L. Ed. 2d 77 (2012)) (herein, *PPL Mont. v. Montana*).   Avista is a Washington-based regulated utility that operates hydroelectric dams in Montana.  In 2004, Avista, along with other utilities, including PPL Montana, LLC (PPL), filed a declaratory action in state court challenging the State's claim for rent, following dismissal of a similar federal action.  *See PPL Mont. v. State*, ¶ 6.  A primary legal issue in the litigation was

3

historic river navigability, on which the State's claim to ownership of the riverbeds turned. *See PPL Mont. v. State*, ¶¶ 22-23. The State argued the subject rivers were navigable at statehood, and thus the riverbeds were owned by the State and subject to its rent claim, while the utilities argued the rivers, or reaches therein, were not navigable at statehood and therefore not owned by the State. *See PPL Mont. v. Montana*, 565 U.S. at 591, 132 S. Ct. at 1227-1228 (explaining that, under the equal-footing doctrine, "[u]pon statehood, the State gains title within its borders to the beds of waters then navigable. . ."). After lengthy litigation, the utilities and the State filed respective motions for summary judgment, with the utilities contending the navigability of the rivers must be determined by a "segment-by-segment approach," while the State argued for a "whole river approach." The utilities also argued material factual conflicts precluded summary judgment on some of the contested waters. *PPL Mont. v. State*, ¶¶ 33-34.

¶5    On October 19, 2007, three days prior to trial, Avista and the State entered a Memorandum of Negotiated Settlement Terms (Settlement Agreement), after which followed the parties' Consent Judgment and Hydropower Site Lease (Lease). These documents referenced PPL's continued litigation of the matter, and contained a provision, entitled Most Favored Nations Clause (MFNC),[1] under which Avista would be granted

---

[1] "**[M]ost-favored-nation clause**. 1. A clause in an agreement between two nations providing that each will treat the other as well as it treats any other nation that is given preferential treatment. 2. By extension, such a clause in any contract, but esp. an oil-and-gas contract." *Black's Law Dictionary, Seventh Edition* (1999), p. 1031.

partial rent relief if PPL obtained a certain favorable outcome in the litigation, as defined

by the Clause:

> If co-party PPL Montana, LLC, either by litigation through judgment and any appeals, or through settlement, receives a determination that the full market value of its land interests at issue in the litigation is based upon factors more favorable to it than those contained in the settlement with Avista, the Avista rent will be adjusted by an amount necessary to reflect the more favorable determination. For purposes of this clause, a more favorable determination will occur if the aggregate annual rent determined by settlement or litigation for PPL Montana ("Determined PPL Rent") is less than 48% of the aggregate amount of base year rent ("Claimed PPL Rent") claimed by the State in its case in chief at trial. If this occurs, the $4 million base to be paid by Avista shall be reduced retroactively starting on the date of final judgment on the PPL Montana claims or settlement by a percentage equal to the Determined PPL Rent divided by the Claimed PPL Rent.

Settlement Agreement, ¶ 3.[2]

¶6      The Consent Judgment, signed by both parties and approved and entered by Hon.

District Judge Thomas Honzel, who presided over the litigation, provided the District Court

"shall retain jurisdiction of this matter for the purposes of entering such further orders,

direction, or relief as may be appropriate for the construction, implementation, or

enforcement of this Agreement."

¶7      PPL continued the litigation and the District Court granted summary judgment to

the State, holding the record demonstrated uncontestably that, by utilization of a "whole

river approach," the subject rivers were, as a matter of fact, navigable at statehood, and

---

[2] This language was also included in the Hydropower Site Lease, ¶ 5, wherein it was also designated as one of several contracted lease "reopeners." A "Reopener for Subsequent Governmental Action" (Government Reopener) and a "Reopener for Subsequent Judicial Determination" (Judicial Reopener) were contained in the settlement documents as well.

therefore, the underlying riverbeds were owned by the State under the equal-footing doctrine. Trial was held to determine rent and damages owed, including therein a determination of the market value of PPL's Montana riverbed-related property and income.[3] PPL appealed to this Court, which generally affirmed the District Court's use of the whole river approach and attendant conclusions, including the State's market value methodology. *PPL Mont. v. State*, ¶¶ 171-72. PPL petitioned the U.S. Supreme Court, which granted certiorari and reversed, holding that utilization of a "segment-by-segment approach to navigability for title" was required. *PPL Mont. v. Montana*, 565 U.S. at 594, 132 S. Ct. at 1229. Upon remand, the case caption was amended to reflect ownership transfer of the hydropower projects from PPL Montana to Talen Montana, LLC (Talen), and Northwestern Corporation, and the case was removed to federal court. The U.S. District Court subsequently ruled the U.S. Supreme Court's opinion was a final determination on the merits that an 8.2-mile segment of the Great Falls reach of the Missouri River was non-navigable and, therefore, title thereto did not transfer to the State. It dismissed the State's claim based on that segment, but litigation has proceeded on the remaining reaches of the subject rivers. No final judgment in that litigation is present on the record of this case.

---

[3] PPL contended that full market value of its interests required a rent payment of $205,000 for 2007, while the State contended under its methodology that $6,207,919 was owed for 2007. The District Court adopted the State's methodology and determined the full amount claimed by the State was owed for 2007, and entered a total judgment of approximately $41 million.

**Current Litigation**

¶8 Avista paid rent to the State as was required by the parties' agreement from 2008 to 2016. However, in 2017, Avista notified the State it would begin making rent payments under protest and depositing the payments into escrow, arguing the U.S. Supreme Court's decision in *PPL Mont. v. Montana*, or the ruling by the U.S. District Court after remand regarding the 8.2-mile segment of the Great Falls reach, constituted a final judgment for that river segment and triggered the MFNC, entitling it to a reduction in rent prospectively, and a credit for past payments under the MFNC's retroactivity language. Avista contended its "prior payments, and future payments, made under protest into the escrow account are authorized under the Lease, until all issues regarding navigability" in the continuing litigation were resolved. The State commenced this litigation in 2018, arguing the MFNC had not yet been triggered, and as such, Avista was not justified in withholding payments. The State further argued that, even if the MFNC had been triggered, the retroactivity provision of the MFNC would require a credit for past payments made only from the date of the final judgment, not for all prior payments made by Avista. Both parties sought summary judgment for a declaration regarding the applicability and interpretation of the settlement documents and Avista's obligations thereunder.

¶9 The District Court first determined that the MFNC had not yet been triggered because no final judgment had been entered "through judgment and any appeals" as provided by the settlement documents, and because neither the U.S. Supreme Court's opinion nor the U.S. District Court's order had made a determination required by the

MFNC "that the full market value of [Talen's] land interest at issue in the litigation is based upon factors more favorable to it than those contained in the settlement with Avista." Thus, the MFNC "[did] not currently provide a basis" for Avista to dispute its rent payment, and Avista was "required to continue to pay the annual full market rental rate as set forth" in the settlement documents. The District Court also declared that the Government Reopener and the Judicial Reopener had not yet been triggered, which it reasoned was undisputed by the parties. Nonetheless, the District Court proceeded to address whether Avista would be entitled to a retroactive refund for past payments under any of these provisions "in the event of a rental rate reduction in the future," and held that any reduction in rent would commence "from the date of that final judgment," not the date Avista commenced payments.

¶10 Avista appealed. Noting the District Court had determined that none of the contested provisions governing reduced rent had yet been triggered, this Court ordered and received supplemental briefing from the parties "on whether the issues Avista raises on appeal present a justiciable controversy or call for an advisory opinion."

**STANDARD OF REVIEW**

¶11 We review a District Court's summary judgment ruling *de novo*. *Tacke v. Energy W., Inc.*, 2010 MT 39, ¶ 16, 335 Mont. 243, 227 P.3d 601. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Mont. R. Civ. P. 56(c)(3). A district court's conclusions

and application of the law are reviewed for correctness. *Meine v. Hren Ranches, Inc.*, 2020 MT 284, ¶ 12, 402 Mont. 92, 475 P.3d 748. Further, "[i]ssues of justiciability, such as standing and ripeness, also are questions of law, for which our review is de novo." *Weems v. State*, 2019 MT 98, ¶ 7, 395 Mont. 350, 44 P.3d 4 (citing *Reichert v. State*, 2012 MT 111, ¶ 20, 365 Mont. 92, 278 P.3d 455).

## DISCUSSION

¶12    *1. Did the District Court err by reaching the merits of a nonjusticiable issue?*

¶13    Ripeness is a "central concept[] of justiciability" that is "concerned with whether [a] case presents an 'actual, present' controversy." *Reichert*, ¶ 54 (quoting *Mont. Power Co. v. Mont. PSC*, 2001 MT 102, 305 Mont. 260, 26 P.3d 91, citing *Portman v. County of Santa Clara*, 995 F.2d 898, 902-03 (9th Cir. 1993)). We have explained that "[t]he basic purpose of the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Reichert*, ¶ 54. Cases are "unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Reichert*, ¶ 54. There are two components to a ripeness inquiry, a constitutional component and a prudential component. Generally, the constitutional component of ripeness is met when the issues presented are definite and concrete, and the prudential component is met when, on balance, the issue is fit for judicial review, and the parties would face severe hardship if the court withholds consideration. *Reichert*, ¶ 56.

¶14    In its supplemental briefing, Avista argues the District Court's determination that the MFNC was not triggered has rendered the entirety of its decision an advisory opinion that should be reversed and dismissed as unripe. At least for purposes of justiciability, Avista does not continue to advance the position it took before the trial court that the decisions of the U.S. Supreme Court and U.S. District Court triggered the MFNC. The State primarily argues the District Court's ruling that the MFNC does not now provide a basis for Avista to withhold rental payments is concrete and justiciable, but also argues the entirety of the dispute remains ripe, because resolving the retroactivity interpretation issue would "resolve[] the present and all prospective disputes related to whether the Consent Judgment provides for a refund."

¶15    We have little trouble concluding the District Court's decision on whether the MFNC has been triggered and provides a current basis for Avista to withhold rental payments satisfies constitutional and prudential ripeness requirements—even if the MFNC has not been triggered. Avista's justiciability argument did not include an explicit concession to release the escrowed lease payments and to reinitiate payment to the State if the action was dismissed.[4] Its unilateral action of directing payments into escrow rather than to the State created a definite and concrete injury—the State has been deprived, so far, of funds approximating 24 million dollars. As explained by the State, these funds "cannot be distributed or used to benefit the intended beneficiaries until the litigation is concluded."

---

[4] Before the District Court, Avista offered that "the funds will be immediately available once their disposition is fully and finally adjudicated."

10

Prudentially, Avista's action has caused a severe hardship for the State, and the escrowed amount would grow if the case was entirely dismissed and Avista continued paying into escrow. Further, this is not merely a contract dispute, but a settlement of prior litigation for which the Consent Judgment expressly preserved in the District Court "jurisdiction of this matter for the purposes of entering such further orders, direction, or relief as may be appropriate for the construction, implementation, or enforcement of this Agreement." Thus, to the extent this dispute involves the current unilateral withholding of significant contractual payments because of a settlement interpretational conflict, it presents a concrete dispute that the District Court was designated by the judgment to resolve so that the settlement would be enforced.

¶16    However, the District Court went further, reasoning that "[a]lthough the Court has determined that Avista is not currently entitled to an adjustment of the rental rate, the Court will address Avista's contention that, in the event of a rental rate reduction in the future, Avista would be entitled to a refund for past overpayments." The District Court thus proceeded to interpret the retroactivity provision of the MFNC, concluding it would not, if triggered, provide a refund for Avista's payments made prior to a final judgment that had triggered a rent reduction, and more, broadly foreclosed any future relief by holding Avista would not be entitled "to a credit or refund for rent paid in any previous year *by any provision* of the Settlement, Consent Judgment or Lease." (Emphasis added.) The District Court's ruling thus encircled provisions other than the MFNC, including the Government Reopener and the Judicial Reopener, under which Avista had not sought payment relief in

11

this proceeding. Here, no concreteness or present controversy exists, and we thus agree with Avista's argument that this portion of the District Court's order must be reversed as being unripe and constituting an advisory opinion about speculative issues that may never arise. *See Reichert*, ¶ 54 ("The basic purpose of the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.").

¶17   *2.   Did the District Court err by its interpretation of the parties' settlement agreement?*

¶18   The District Court concluded the MFNC had not been triggered under the terms of that provision, first, because no "final judgment" had yet been entered in the *PPL/Talen* litigation. The court reasoned that the U.S. Supreme Court had remanded the matter for further proceedings, and the U.S. District Court's dismissal of the State's claim to one segment of a contested river reach was not final "through judgment and any appeals," as stated in the MFNC. Secondly, the court reasoned that neither the U.S. Supreme Court's opinion nor the U.S. District Court's order constituted "a determination that the full market value of [Talen's] land interest at issue in the litigation is based upon factors more favorable to it than those contained in the settlement with Avista," under the MFNC. Upon these conclusions, the District Court entered a declaratory judgment that "Avista is required to continue to pay the annual full market rental rate as set forth in the Settlement, Consent Judgment, and Lease."

¶19   Avista's briefing on appeal, even prior to our request for supplemental briefing, did not challenge the District Court's conclusion the MFNC had not been triggered, but instead

12

extensively argued the District Court's interpretation of the retroactivity provision was incorrect ("All Avista is asking is that the State be held to its end of the bargain and, *if the MFNC is triggered*, recognize that its provisions apply retroactively and require previous rent be recalculated."). (Emphasis added.) This argument now appears to be subsumed into Avista's supplemental argument that the entire District Court holding be reversed as nonjusticiable. In any event, we have concluded above that the District Court erred in reaching the merits of the retroactivity issue, and therefore, we need not further address that issue.

¶20 That leaves only the District Court's determination the MFNC does not now provide a basis for Avista to withhold rent payments from the State, or to pay them into escrow, with which we concur. We thus affirm its declaration that "Avista is required to continue to pay the annual full market rental rate as set forth in the Settlement, Consent Judgment, and Lease."

¶21 Affirmed in part, reversed in part, and remanded for entry of an amended judgment consistent with this Opinion.

/S/ JIM RICE

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

13