Justice Beth Baker delivered the Opinion of the Court.
*421 ***497 ¶1 Pamela Fossen ("Pam") appeals an order from the Eighth Judicial District Court, Cascade County, awarding Allen Fossen ("Al") prejudgment interest on a $ 20,000 sum Pam was directed to pay in the dissolution. Pursuant to a provision in the dissolution settlement agreement, the District Court also awarded Al's attorney fees incurred in a separate action. We address the following issues on appeal:
1. Whether the District Court erred in awarding Al attorney fees under terms of the parties' dissolution Settlement Agreement for defending Pam's third-party complaint against him in a separate action;
2. Whether the District Court abused its discretion in admitting certain evidence to support the calculation of attorney fees and costs; and
3. Whether the District Court erred in awarding prejudgment interest.
¶2 We affirm issues one and three and reverse and remand issue two for the District Court to determine the amount of attorney fees and costs upon properly admitted evidence.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 Pam and Al entered into a portable toilet business, Great Falls Portables, Inc., with Charles and Mary Lou Dees (the "Deeses") in 1996. Pam and Al separated in 2001, and Pam took control of the management of Great Falls Portables. Pam created a separate LLC, Rocky Mountain Portables, and transferred all Great Falls Portables assets and customers to Rocky Mountain Portables. The Deeses filed suit against Pam, Great Falls Portables, and Rocky Mountain Portables in October 2003, seeking recognition of their interest in Great Falls Portables.
¶4 Pam and Al entered into a Settlement Agreement a month later to divide their marital property between them in the marriage dissolution action. The Agreement called for Pam to receive Great Falls Portables and to pay Al $ 20,000 from the sale or refinance of the real property used by Great Falls Portables. The Agreement provided that ***498 Pam would indemnify Al from certain debts, including Pam's agreement to "be responsible to the Dees for any obligation which may be owed them in connection with their interest, if any, in Great Falls Portables." The Agreement's attorney fee provision stated that, "In the event of future litigation between the parties to enforce, modify, or interpret any provision of this agreement, the prevailing party shall be entitled to all his or her court costs, including a reasonable attorney's fee."
¶5 Shortly after entry of the final dissolution decree incorporating Pam and Al's Agreement, Pam filed a third-party complaint against Al in the Deeses' suit against her.[1] Pam alleged that the Deeses' claim arose out of Al's fraudulent actions in his individual capacity and that Al had fraudulently induced Pam to enter the Agreement assigning responsibility for payment of the Deeses' interest. She demanded that Al remedy this fraud by indemnifying her against all liability to the Deeses. The district court in that case granted Al summary judgment on all three counts because Pam failed to plead fraud with sufficient particularity, and no material issue of fact demonstrated Pam's reliance on the alleged fraudulent representations. The court dismissed Pam's indemnity and contribution claim as relating back to the fraud alleged in the other two counts. This Court affirmed the district court's grant of summary judgment to Al on all issues. Fossen I , ¶ 21.
¶6 Following Fossen I , Al moved in the dissolution action to compel enforcement of the Agreement and for an award of attorney fees and costs. The request for attorney fees was based on Al's defense of the third-party complaint in the Dees case. In July 2014, the Standing Master held a hearing on Al's motions, together with Pam's motion to set *422 aside the Agreement for fraud, her motion for attorney fees and costs or for a setoff, and her motion for contempt for failure to pay child support. The Standing Master granted Al's motion and ordered Pam to pay Al the $ 20,000 awarded in the Decree. The Standing Master denied Pam's motions and set a hearing on the amount of fees. The Standing Master awarded Al fees from the third-party action because the Agreement's attorney fee provision did not limit recovery to only future litigation in the dissolution. The Standing Master interpreted the provision to apply to any litigation involving enforcement, ***499 modification, or interpretation of the Agreement. The Standing Master concluded that the substance of Pam's third-party complaint against Al was to modify the Agreement: Pam sought to avoid being solely liable for payment to the Deeses for their equity interest in Great Falls Portables. The Standing Master held a hearing on the amount of attorney fees in March 2015. Pam paid Al the $ 20,000 pursuant to the Agreement on the day of the hearing. At the hearing, Al presented attorney Doug Allen as his expert to testify on the reasonableness of the attorney fees.
¶7 The Standing Master failed to rule on the amount of attorney fees, and the District Court withdrew the referral and took up the issue. Considering the testimony and exhibits from the March 2015 hearing, the District Court awarded Al $ 45,894 in attorney fees from his defense to the third-party complaint. The court also awarded Al $ 18,684.93 in prejudgment interest, reasoning that the right to recover the $ 20,000 payment vested when the Agreement was entered in November 2003.
STANDARDS OF REVIEW
¶8 We review for abuse of discretion a decision on a request for an award of attorney fees unless a contract requires an award of fees, in which case a district court lacks discretion to deny the request. In re Marriage of Szafryk , 2010 MT 90, ¶ 19, 356 Mont. 141, 232 P.3d 361. In that case we review the district court's interpretation of the contract to determine whether it is correct. In re Marriage of Szafryk, ¶ 19. We review evidentiary rulings for abuse of discretion. In re Marriage of Lundstrom , 2010 MT 261, ¶ 10, 358 Mont. 318, 245 P.3d 25. A district court, however, is bound by the Montana Rules of Evidence and applicable statutes in exercising its discretion. State v. Polak , 2018 MT 174, ¶ 12, 392 Mont. 90, 422 P.3d 112. Accordingly, we review de novo a district court's ruling based on its interpretation of a Rule of Evidence or a statute. Polak , ¶ 12. We review the decision to award prejudgment interest to determine whether the district court correctly interpreted the law. DeTienne v. Sandrock , 2018 MT 269, ¶ 30, 393 Mont. 249, 431 P.3d 12.
DISCUSSION
¶9 1. Whether the District Court erred in awarding Al attorney fees under terms of the parties' dissolution Settlement Agreement for defending Pam's third-party complaint against him in a separate action.
¶10 The Standing Master held that the relief Pam sought against Al in the third-party complaint appropriately could have been brought as ***500 part of an action to modify the portion of the Settlement Agreement that made Pam responsible for any obligation to the Deeses in connection with Great Falls Portables. The court therefore concluded that the third-party complaint constituted an action to modify the Agreement and is thus subject to its attorney fee provision. Pam argues that the Standing Master incorrectly applied the Agreement's attorney fee provision because it was intended to apply only to enforcement of terms governing the marriage dissolution. Pam maintains that there is no wording in the Agreement allowing for the provision's application to litigation separate from the dissolution action.
¶11 Provisions set forth in a marital property settlement agreement are enforceable as contract terms. Section 40-4-201(5), MCA. "District courts are bound by attorney fee provisions within marital settlement agreements if the terms of the agreement are clear." In re Marriage of Simpson , 2018 MT 281, ¶ 34, 393 Mont. 340, 430 P.3d 999 (internal citation omitted). The attorney fee provision in the Agreement provides: "In the *423 event of future litigation between the parties to enforce, modify, or interpret any provision of this agreement, the prevailing party shall be entitled to all his or her court costs, including a reasonable attorney's fee." The language of the provision does not limit recovery of attorney fees to future litigation only in the dissolution case. The Standing Master did not err in concluding that the provision applied to any future litigation, as long as the litigation "involve[ed] enforcement, modification or interpretation" of the Agreement. That is what the plain language provides.
¶12 Pam relies on In re Marriage of Simpson , in which the settlement agreement contained language substantively identical to the attorney fee provision at issue in this case. See In re Marriage of Simpson , ¶ 34. The appellant asserted that she was entitled to attorney fees related to a bankruptcy proceeding that her ex-husband filed. The district court denied her request, reasoning that the bankruptcy proceedings were separate proceedings from the dissolution and the bankruptcy judge did not order the ex-husband to pay attorney fees to any creditors, including the appellant. In re Marriage of Simpson , ¶ 35.
¶13 As the Standing Master observed, Count II of Pam's Third-Party Complaint referenced the Agreement directly. Pam alleged that "[a]s a direct result of the fraudulent acts of [Al], [Pam] was fraudulently induced into entering into the indemnification agreement, all to her detriment and damage." Through the Third-Party Complaint, Pam sought to avoid being solely liable for payment to the Deeses for their alleged interest in Great Falls Portables. See Fossen I , ¶ 20 (finding ***501 that "[t]hroughout this litigation, Pam framed her indemnity argument as a remedy to Allan's fraud"). Substantively, Pam sought relief from-or modification of-her agreement to "be responsible to the Dees[es] for any obligation which may be owed them in connection with their interest, if any, in Great Falls Portables." Unlike In re Marriage of Simpson , where the bankruptcy proceeding did not require the court to "enforce, modify, or interpret" the agreement in any way, the parties' indemnity agreement specifically referenced the Deeses' claims, and the fee provision reasonably encompassed attorney fees Al incurred in defending Pam's attempt to avoid responsibility for those claims. Because the Third-Party Complaint sought to modify the Agreement's terms, the Standing Master did not err in awarding Al attorney fees pursuant to its plain language.
¶14 2. Whether the District Court abused its discretion in admitting certain evidence to support the calculation of attorney fees and costs.
¶15 The Standing Master held a hearing in March 2015 regarding attorney fees and costs. Allen testified that the fees Al claimed were reasonable. Allen based his opinions on the Standing Master's summary of the litigation history, the briefs filed with this Court in Fossen I , and the billing statements provided by Al's attorneys. Allen had no personal knowledge of the case or of the work described in the billing statements. Over Pam's objection to lack of foundation, the Standing Master admitted a compilation of billing records from Al's attorneys, Barbara Bell, E. Lee LeVeque, and Jason Holden; copies of checks; hand written notes; and invoice listings ("Exhibit A"). It also admitted a summary of attorney fees and costs compiled from Exhibit A by Jason Holden ("Exhibit B"). The attorneys did not testify. The District Court assumed jurisdiction over the case when the Standing Master did not issue a ruling. After reviewing Exhibits A and B and the transcript of Allen's expert testimony, again over Pam's objection, the District Court awarded Al attorney fees and costs in the amount of $ 45,894. Pam argues that there was no foundation for the exhibits or for the calculation because the attorneys involved in the matter did not file affidavits or testify regarding their billable ledgers, and it was never shown at the hearing that each billable amount was accounted for.[2] Al responds that Exhibit A was authenticated *424 by a "witness with ***502 knowledge" and admissible pursuant to M. R. Evid. 901(b)(1), and that Exhibit B was admissible as a summary pursuant to M. R. Evid. 1006.
¶16 Like any other award, an award of attorney fees must be based on competent evidence. Plath v. Schonrock , 2003 MT 21, ¶ 39, 314 Mont. 101, 64 P.3d 984. To be admissible, evidence requires authentication or identification that supports a finding that the matter is what the proponent claims. M. R. Evid. 901(a). Authentication or identification may be accomplished by the testimony of a witness with knowledge that a matter is what it is claimed to be. M. R. Evid. 901(b)(1). Firsthand knowledge that a document is what it is purported to be is sufficient for its introduction and admissibility under M. R. Evid. 901(b)(1). State v. Sullivan , 182 Mont. 66, 72, 595 P.2d 372, 376 (1979) ; see also Smith v. Burlington N. & Santa Fe Ry. , 2008 MT 225, ¶ 52, 344 Mont. 278, 187 P.3d 639 (discussing that none of the affiants could authenticate a document pursuant to Rule 901(b)(1) because none could testify "to the genuineness and authenticity"). To support a claim for attorney fees, there "must be some type of proof of amount and reasonableness introduced into the record by counsel." In re Marriage of Mease , 2004 MT 59, ¶ 58, 320 Mont. 229, 92 P.3d 1148.
¶17 Al's only witness at the hearing on fees was his expert Allen, a lawyer with considerable experience, who testified to the reasonableness of the fees claimed. Allen had no personal knowledge of the truth or accuracy of the written statements of hourly charges for the attorney fees in this case. When asked if he could look through the bills and tell the court what the attorney did, Allen responded, "No, I can tell what the attorney described, and understand what he's describing because ... I'm familiar with those kinds of legal services." Allen could not testify to the number of the hours spent on the matter or that the hours billed were devoted to the issue of modifying the Agreement, because he did not have that knowledge. Without personal knowledge of the case, Allen could not testify that Exhibit A was what it purported to be, an accurate representation of hours Al's attorneys billed him in defending against Pam's Third-Party Complaint. Exhibit A therefore was not admissible pursuant to M. R. Evid. 901(b)(1) because Allen lacked personal knowledge to establish that the exhibit was true and accurate.
¶18 Although an expert may rely on inadmissible evidence in formulating an opinion, the expert may not serve as a conduit for the admission of substantive evidence. See ***503 Reese v. Stanton , 2015 MT 293, ¶ 22, 381 Mont. 241, 358 P.3d 208 ; Weber v. BNSF Ry. , 2011 MT 223, ¶ 38, 362 Mont. 53, 261 P.3d 984. Allen could rely on the documents in Exhibits A and B to formulate an opinion on the reasonableness of the fees claimed. Without personal knowledge, however, Allen could not testify to the accuracy of the billing records or be cross-examined on their substance.[3]
¶19 For a summary to be admissible under M. R. Evid. 1006, it must meet two requirements: (1) the underlying material upon which the summary is based must be admissible in evidence; and (2) the underlying materials must be made available to the opposing party for inspection. Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc. , 2008 MT 2, ¶ 77, 341 Mont. 33, 174 P.3d 948. The District Court improperly admitted Exhibit B as a summary pursuant to M. R. Evid. 1006 because the underlying material *425 in Exhibit A was inadmissible as it was presented.
¶20 The District Court abused its discretion when it admitted the billing records without adequate foundation, as required by M. R. Evid. 901. Without that foundation, the court erred in relying on the amounts set forth in Exhibit A and Exhibit B to calculate the attorney fees and costs. We reverse and remand for further proceedings to determine the amount of attorney fees and costs upon properly admitted affidavit or testimonial evidence.
¶21 3. Whether the District Court erred in awarding prejudgment interest.
¶22 In September 2010, the Standing Master stayed all motions in the dissolution case pending resolution of the Dees litigation. The parties stipulated to continue to stay the dissolution proceedings pending this Court's decision on Pam's appeal in Fossen I because many or all of the issues raised in the dissolution case would be affected by this Court's decision. Al moved to lift the stay and for attorney fees and costs in November 2013 after this Court affirmed summary judgment on the Third-Party Complaint. In its final order awarding Al his fees and costs, the District Court also awarded Al prejudgment interest in the ***504 amount of $ 18,684.93. The District Court found that interest accrued on the $ 20,000 judgment for nine years and 125 days. Pam argues that she was prevented by law from paying any debt during the stay in this case, and prejudgment interest therefore should not have accrued during the stay periods. Pam maintains further that the District Court did not complete its analysis of the requirements to award prejudgment interest pursuant to § 27-1-211, MCA. She maintains that there was no underlying monetary obligation because no set amount was being litigated; that the amount of recovery was not certain or capable of being calculated because the calculations included dates during this case's stay; and that the court did not find that the right to recover vested on a certain date.
¶23 "The primary objective of the prejudgment interest statute is to fully compensate the injured party for the loss of use of his money during the period in which a valid claim was not paid." DeTienne , ¶ 30 (internal citations and quotations omitted). Prejudgment interest is awarded pursuant to § 27-1-211, MCA, when: (1) there is an underlying monetary obligation; (2) the amount of the recovery is certain or capable of being made certain; and (3) the right to recover vests on a particular day. DeTienne , ¶ 30. The award of prejudgment interest is mandatory if the requesting party satisfies the § 27-1-211, MCA, criteria. Kraft v. High Country Motors , Inc. , 2012 MT 83, ¶ 71, 364 Mont. 465, 276 P.3d 908. Section 27-1-211, MCA, provides that interest accrues "except during the time that the debtor is prevented by law ... from paying the debt." Pam argues that the plain language in § 27-1-211, MCA, means that no interest accrued during the stay. But the $ 20,000 payment was for Al's share of the real property and was not tied to the Deeses' claimed interest in the business. Pam has not developed her argument or provided this Court with any support to suggest that during the stay she was prevented by law from paying the sum she agreed to pay. It is not this Court's obligation to conduct legal research on behalf of a party, to speculate a party's precise position, or to develop legal analysis that may lend support to the position. Johnston v. Palmer , 2007 MT 99, ¶ 30, 337 Mont. 101, 158 P.3d 998 ; see also M. R. App. P. 12(g). We decline to address this argument further.
¶24 The District Court correctly awarded prejudgment interest after finding all § 27-1-211, MCA, elements satisfied. An underlying monetary obligation existed because Pam and Al settled in the Agreement that, "The shop is to be sold as soon as possible and from the net proceeds [Al] shall receive $ 20,000.00, with said amount to be secured in the property until sold by a mortgage on the property.
***505 Alternatively, [Pam] may refinance or otherwise pay [Al] for the $ 20,000 and retain ownership of the property." Pam did not sell the property, and she did not pay Al the $ 20,000 obligation until March 2015. The amount of recovery is certain because the parties agreed to the amount of $ 20,000 in the Agreement regardless if the property was sold or refinanced, or if Pam paid Al by *426 other means. The court correctly found that the right to recover vested on November 4, 2003, when the Agreement was entered into because the Agreement became effective upon its filing with the District Court-November 4, 2003. The District Court found that due to the nature of the property, the latest the property should have been sold was November 4, 2005. Pam was credited for that intervening time, and the District Court did not calculate interest for those two years. The District Court therefore did not err in awarding Al prejudgment interest because all the § 27-1-211, MCA, elements were satisfied.
CONCLUSION
¶25 The District Court did not err in awarding Al attorney fees pursuant to the Agreement when Pam's third-party complaint substantively asked the court to modify the Agreement. But it lacked admissible evidence to properly evaluate the amount of Al's claimed attorney fees and costs. We affirm the decision to award fees, but reverse and remand for further proceedings for the District Court to determine the amount of attorney fees and costs. We affirm the District Court's award of prejudgment interest on Pam's $ 20,000 obligation to Al under the Settlement Agreement.
We Concur:
MIKE McGRATH, C.J.
JIM RICE, J.
DIRK M. SANDEFUR, J.

The Third-Party Complaint is not included in the record for this case; it was included in the record of a separate appeal involving the Dees litigation, Fossen v. Fossen , 2013 MT 299, 372 Mont. 175, 311 P.3d 743 (Fossen I ). We take judicial notice of the Third-Party Complaint and its contents pursuant to M. R. Evid. 201(c).

Pam's counsel preserved her claim on appeal by objecting to the records for lack of foundation. He argued specifically to the Standing Master that the expert could not testify whether the records were "true and accurate" and that Al's counsel "ha[d]n't testified to them [and] ha[d]n't done an affidavit." Counsel again explained later in the hearing, "my objection is that he never called any of the witnesses to lay a foundation for this billing, you know, or present any affidavit to the Court for any of these billing[s]."

The Dissent's citation to Tacke v. Energy West, Inc. , 2010 MT 39, 355 Mont. 243, 254, 227 P.3d 601, for the proposition that billing statements need not be admitted to establish a claim for attorney fees is misplaced. Unlike here, though "short on detail", there was affidavit and testimonial evidence in Tacke from the attorney who actually claimed the hours. Tacke , ¶ 34. The point here is lack of personal knowledge of the hours claimed, not whether the records themselves had to be admitted. This is a fundamental rule of evidence that we are unwilling to overlook simply because the case already has dragged on for years.